E-FILED
Tuesday, 21 April, 2020  02:45:21 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RYAN UMBERGER,                    ) <br><br> Plaintiff,     ) <br><br> v.          ) <br><br> CITY OF PEORIA, FORMER CHIEF ) <br> JERRY MITCHELL, CAPTAIN ) <br> MICHAEL SCALLY, CAPTAIN LOREN ) <br> MARION, FORMER LIEUTENANT ) <br> STEVEN ROEGGE, AND FORMER ) <br> FIELD TRAINING SERGEANT ) <br> BRADFORD VENSON,     ) <br><br> Defendants.    ) | Case No. 19-cv-1045-JES-JEH |

## <u>ORDER AND OPINION</u>

This matter is now before the Court on a Motion to Dismiss (D. 16[1]) filed collectively by Defendants City of Peoria, Jerry Mitchell, Michael Scally, Loren Marion, Steven Roegge, and Bradford Venson. Plaintiff Ryan Umberger filed a Response (D. 23) and Defendants filed a Reply (D. 27). For the reasons set forth below, Defendants' Motion is DENIED in part and GRANTED in part.

### BACKGROUND

For the purposes of resolving this Motion, the Court takes the following factual allegations from Plaintiff's Complaint as true. Plaintiff Ryan Umberger ("Umberger") is a white male who was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") as a child. D. 1, at 4. To manage this disorder, Umberger developed coping and adjustment skills, and he was prescribed Adderall to sharpen his ability to focus. *Id.*

---

[1] Citations to the Docket in this case are abbreviated as "D. __."

In February 2017, Umberger was hired as a probationary police officer ("recruit") for the Peoria Police Department ("Department"), which is a department within the City of Peoria, Illinois ("Peoria" or "City"). *Id.* at 4-5. Despite his prior employment as a police officer in other jurisdictions, Umberger was required to go through Peoria's field training program. *Id.*

Defendant Bradford Venson ("Venson") was the supervisor of the field training program since at least 2011. *Id.* at 7. Umberger met with Venson after joining the Department to explain he may need additional time to complete written tests because of his ADHD and that Adderall would be present in any blood or urine tests. *Id.* at 6. Venson gave no assurances, offered no encouragement, and never again discussed accommodations with Umberger. *Id.* Instead, Venson created and maintained a hostile work environment due to Umberger's disability. *Id.* Venson led other officers, especially training officers under his command, to berate Umberger "for being slow and stupid." *Id.* at 6-7.

Umberger claims Defendants identified Umberger as a "disfavored" recruit, a categorization based on a recruit's gender, race, physical disability and willingness to discriminate against minority citizens. *Id.* at 7. Umberger was grouped with the "disfavored" recruits because of his ADHD. *Id.* "Disfavored" recruits were denied assistance and support when they needed extra attention in certain skills. *Id.* at 8. Their weaknesses were highlighted to berate, abuse, and humiliate them. *Id.* The "disfavored" recruits were ordered to sit in the squad while the training officers and "favored" recruits had meals in restaurants. *Id.* Umberger and other "disfavored" recruits were not properly instructed on the block divider system, which was used by officers to find their way to addresses throughout the city. *Id.* at 11.

By contrast, "favored" recruits were mostly white males, although white males with disabilities and white males who challenged or refused to enforce discriminatory policing

2

practices were not included in this group. *Id.* at 7. A couple of white females were treated as "favored" recruits if they had either a close familial tie to or a close romantic relationship with a member of the Department. *Id.* The "favored" recruits were given privileges withheld from the "disfavored" recruits, such as extra assistance in training, assignments to more affluent districts, and encouragement to socialize during their shifts with other officers and superiors. *Id.* at 8.

Umberger feels he was targeted to fail before he began his training. *Id.* at 9. As a "disfavored" recruit, Umberger was berated by training officers and repeatedly told he was "stupid" and "slow." *Id.* He was given substandard instruction by not being shown how to certain perform tasks. *Id.* Umberger was given mostly negative feedback and feedback was provided weeks or months later, so it was of no use to him. *Id.* at 10. He rarely received positive feedback or instruction on how to improve his performance. *Id.* On one occasion, a training officer told Umberger he was meeting goals and handling a lot of calls; however, his subsequent written evaluation stated the opposite. *Id.* When Umberger confronted the training officer, he was told Venson ordered the officer to change the evaluation to a negative one. *Id.* Umberger also says he was subjected to cruel and dangerous "pranks" by other officers, including an incident where the rifle was taken from his unlocked squad vehicle. *Id.* Venson yelled at and berated Umberger the following day, despite being aware of the "prank." *Id.*

Umberger asserts he was not the only white male forced out of the training program due to a disability. *Id.* at 11. In 2011, the Department hired a white male who had been diagnosed with juvenile diabetes as a child. That recruit was also subjected to abuse and humiliation as a "disfavored" recruit and eventually "forced out." *Id.* The recruit found employment in a neighboring jurisdiction but committed suicide. *Id.*

Umberger alleges the Department had a widespread policy, practice, or custom of

3

frequently subjecting minority citizens, "especially those residing in housing projects," to illegal stops without probable cause or reasonable suspicion. *Id.* at 11-12. Recruits were instructed to coerce minority citizens to consent to searches of their property. *Id.* at 12. Umberger did not embrace the discriminatory policing practice. *Id.* at 11. Defendants used the training program to oust those recruits who were likely expose the discriminatory policing practice. *Id.* at 12.

After nine months in the training program, Umberger was told to attend a meeting without further detail. *Id.* Defendants Venson, Loren Marion ("Marion"), and Michael Scally ("Scally") presided over the meeting. *Id.* at 13. The trio informed Umberger he was being terminated, effective immediately and without providing a reason. *Id.* They told him that being terminated as a recruit would divest Umberger of his accreditation and prohibit him from any future work in law enforcement. *Id.* They then offered him an alternative to save his accreditation: Umberger could immediately submit a letter of resignation, but the offer would expire at the end of the meeting. *Id.* Umberger chose to resign to preserve his career in law enforcement. *Id.* at 14. He prepared a resignation letter and submitted it. *Id.*

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In

4

deciding whether the complaint sufficiently states a claim, courts take well-pleaded allegations in the complaint as true and draw all permissible inferences in favor of the plaintiff. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

**DISCUSSION**

Defendants now collectively move to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). The Court will address each count in numerical order as listed in the Complaint.

**Count I – Disability-Based Discrimination Under § 1983 Against All Defendants**

Defendants move to dismiss Count I because Umberger does not have a qualifying disability under the Americans with Disabilities Act ("ADA") or Rehabilitation Act, and as such, he cannot make a claim under 42 U.S.C. § 1983. D. 16, at 3. They argue Umberger has not demonstrated he is a member of a protected class; therefore, he cannot make a § 1983 claim for violation of the Equal Protection Clause. D. 27, at 5.

While a complaint must contain more than a general recitation of the elements for a cause of action, the pleading standards for an employment-discrimination claim is minimal. A short and plain statement of the claim must be sufficient to put the defendant on notice as to the nature of the claim. *Twombly*, 550 U.S. at 555; *see also Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("I was turned down for a job because of my race" is all a complaint need state for a claim of racial discrimination under Title VII or equal protection claim under Fourteenth Amendment).

As discussed in further detail under Count IX, the Court finds Umberger has properly stated a claim under the ADA and his discrimination claim will survive the motion to dismiss; however, the Court is not making a finding on whether Umberger is substantially limited in one or more major life activities. He alleges he suffered adverse employment actions because of his

5

ADHD, including harassment and termination of his employment. While he presents a consistent pattern of abuse and harassment by Venson, the only allegations against Scally and Marion involve the training meeting that resulted in Umberger's resignation. Still, Umberger alleges they intentionally acted to either terminate his employment or coerce his resignation in part because of his disability. This is sufficient to put Venson, Scally, and Marion on notice of the discrimination claim against them. As such, the motion to dismiss is DENIED as to Count I against Venson, Scally, and Marion.

Umberger brings this claim against all Defendants; however, a municipality like Peoria can only be held liable under § 1983 when the plaintiff identifies a practice, policy, or custom "that effectively caused or condoned the alleged constitutional violations." *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019) (quoting *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)). Here, Umberger does not provide a factual basis to support the conclusion that municipal policymakers knew of and were deliberately indifferent to a widespread policy, practice, or custom of discriminating against recruits for their disabilities. He provides one example of another recruit who was discriminated against for a disability, but this is not sufficient to claim that a widespread policy or practice existed or that policymakers knew of the discriminatory conduct. For that reason, the motion to dismiss is GRANTED as to Count I against Peoria with leave to amend.

Similarly, a supervisor can only be held liable under § 1983 if the supervisor was "personally responsible for the deprivation of the constitutional right." *Matthews*, 675 F.3d at 708 (internal quotations omitted). To show personal involvement, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). The Complaint

contains no allegations against either Mitchell or Roegge. In his response, Umberger argues in relevant part that Mitchell did nothing to stop the harassment. D. 23, at 24. He also claims Roegge was the Lieutenant in charge of the training program and Venson's immediate supervisor. *Id.* Umberger admits his failure to include these facts in the Complaint and requests leave to amend. *Id.* For these reasons, the motion to dismiss is GRANTED as to Count I against Mitchell and Roegge with leave to amend.

**Count II - Violation of Procedural Due Process Under § 1983 Against All Defendants**

Defendants move to dismiss Count II because Umberger had no property interest in his employment. D. 16, at 2. Defendants contend at-will or probationary employees in Illinois do not have a protected property right in continued employment. D. 17, at 5.

Umberger claims his procedural due process rights were violated because Defendants coerced his resignation. D. 1, at 18. Umberger contends Defendants did not follow the system of review for the termination of recruits by failing to provide notice or the cause of his termination, and by not having his termination reviewed by the Board of Commissioners. *Id.*

To state a due process claim, Umberger must establish he had a constitutionally protected property interest in his employment with the Department. *Covell v. Menkis*, 595 F.3d 673, 675 (7th Cir. 2010). "Under Illinois law, a person has a property interest in his job only where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). Umberger can show a legitimate expectation of continued employment by pointing to an Illinois law, an ordinance, a contract, or some understanding that limits the Department's ability to discharge him. *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011). While Illinois generally does not recognize a property interest in continued employment for probationary public employees, a municipality may provide greater protection to

7

these employees through enacting rules and regulations. *Redd*, 663 F.3d at 296. Such a rule or regulation can only create a property interest if it is a "clear policy statement" that overcomes the clear statutory language allowing probationary employees to be fired without cause. *Id.* at 296-97. In other words, Umberger needs to point to something that declares recruits can *only* be terminated from the Department for cause.

Umberger argues probationary officers in Peoria are given greater due process protection than provided by state law. D. 23, at 4. He contends Field Training General Order 300.11 ("FTGO 300.11") created an entitlement to a property interest and that entitlement is "strengthened by other agreements, policies, and aspects of the recruit program." *Id.* FTGO 300.11 sets out a procedure for terminating a recruit who is "not performing at a satisfactory level[.]" D. 1, at 14. FTGO 300.11 states that once a recruit is recommended for termination, the training commander shall prepare a detailed report, which is reviewed by the police chief. *Id.* The recruit is notified, and a termination hearing must be set within 72 hours. *Id.* The police chief presides over the hearing, during which the chief and training commander present reasons for the termination and the recruit is given an opportunity to respond. *Id.*

Umberger also refers to "extensive written provisions" that created a property interest, including "signed agreements," "department rules and orders," and "a written multi-step procedure with specific promises of notice, review, and two hearings[.]" D. 23, at 5. Umberger maintains Defendants created a property right through these written provisions, which recruits relied on in good faith. *Id.* He contends he could not attach these agreements and other provisions to the Complaint because he does not possess a complete set. *Id.* at 6. In his response to the motion, Umberger references Section 4.17 of the Board of Fire and Police Commissioners' Rules and Regulations, which allows a recruit to request a panel review of his discharge. *Id.* at 7.

It is questionable whether FTGO 300.11 or any other provision establishes Umberger had a protected property interest in his employment because he does not allege recruits could only be terminated for cause. "Procedural guarantees, whether relied on or not, do not establish a property interest protected under the Fourteenth Amendment's Due Process Clause." *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). Even an agreement or signed document that states recruits can be fired for cause does not establish a protected property interest. *Redd*, 663 F.3d at 296-97 (finding a signed agreement that states "I am on probation and can be terminated for cause" was not a sufficient clear policy statement that probationary employees could only be terminated for cause). Nonetheless, Umberger does assert Defendants were limited in their ability to discharge recruits.

For purposes of a 12(b)(6) motion, the Court will allow this matter to go forward, with the belief that discovery and possibly dispositive motions may resolve the issue; however, Umberger has only alleged Venson, Scally, and Marion were involved in his coerced resignation. Umberger does not allege that Mitchell or Roegge were involved in the termination meeting or that they had knowledge of the circumstances of his resignation. Likewise, Umberger has not alleged a factual basis that municipal policymakers, including Mitchell, knew of and were deliberately indifferent to a widespread policy, practice, or custom of violating the due process rights of recruits. For these reasons, the motion to dismiss is DENIED as to Count II against Venson, Scally, and Marion, and GRANTED against Peoria, Mitchell and Roegge with leave to amend.

### Count III - Conspiracy Under § 1983 Against All Individual Defendants

Defendants move to dismiss Count III because it fails the *Iqbal* plausibility test. D. 16, at 3. They point to the absence of facts identifying all individuals involved in the conspiracy, any

9

meeting or understanding between those individuals, the scope or purpose of any such meeting or understanding, or the date or location of the meeting. D. 17, at 16.

Even before *Twombly*, 550 U.S. 544, and *Iqbal*, 129 S. Ct. 1937, a bare allegation of a conspiracy could not survive a motion to dismiss. *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). The Supreme Court established the plausibility standard in *Twombly* for complex litigation and then extended its application to litigation in general with *Iqbal*. *Id.* at 971. To determine whether a plaintiff has stated a plausible claim for relief, a reviewing court must look at the context of the claims and draw on its judicial experience and common sense. *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To plead a plausible § 1983 conspiracy claim, it is sufficient to "indicate the parties, general purpose, and approximate date." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002) (stating that conspiracy actions should not be dismissed because they are "conclusory" or because they fail to specify an overt act). Umberger has not met this burden.

Umberger brings this Count against all individual Defendants. D. 1, at 19. He alleges Defendants Scally, Marion, and Venson, along with unknown members of the Department, conspired to either terminate his employment without cause or due process or to coerce his resignation. *Id.* Unknown members of the conspiracy acted in furtherance of it by humiliating Umberger, creating a hostile work environment, refusing to assist and train him, and violating the rights of minority citizens. *Id.*

Umberger has alleged the general purpose was to discharge his employment, but that is all he offers to support this conspiracy. He has not indicated all the parties to the conspiracy, but instead alleges unknown members of the Department were involved. It seems unlikely Umberger

would not know any the individuals who humiliated him, created a hostile work environment, and refused to train him other than the named Defendants. He has not pled an approximate date, so it is unknown when the plot began. Umberger does not come close to stating a facially plausible claim that these Defendants conspired to end his employment. This claim also conflicts with Umberger's allegations throughout the complaint that a widespread policy, practice, or custom existed with the same purpose as the conspiracy. In short, Umberger does not provide a factual basis to raise this conspiracy claim above a speculative level.

In his response to the motion, Umberger argues he pled a persistent pattern of harassment over nine months by training supervisors and other officers that culminated in his resignation. D. 23, at 21. Umberger claims he has alleged a scenario in which "harassment is obviously the product of a conspiracy[]" and the daily harassment by Defendants' employees showed a "unified effort to make Plaintiff's workday unbearable." *Id.* at 22.

Despite his arguments to the contrary, Umberger has not alleged a persistent pattern of harassment by anyone other than Venson. Venson berated and humiliated Umberger, while also creating and maintaining a hostile work environment. D. 1, at 6. Venson ordered unnamed training officers to give Umberger poor marks on his evaluations. *Id.* at 9. Umberger does not name the other training officers who ridiculed him by repeatedly calling him "stupid" and "slow" and making derogatory jokes over the police radio. *Id.* at 9. There is no allegation that Scally, Marion, Roegge, or Mitchell had any involvement in field training program, that they were involved in harassing Umberger, or that they even knew Umberger was being harassed.

Umberger is far from alleging a plausible conspiracy claim under § 1983. As such, the motion to dismiss is GRANTED as to Count III with leave to amend.

**Count IV – Violation of § 2000e-2 Under Title VII Against All Defendants**

As a preliminary matter, Umberger brings Count IV against all Defendants. D. 1, at 19. However, it has long been established that there is no individual liability under Title VII of the Civil Rights Act of 1964. *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). Only an employer, as defined by Title VII, may be liable for unlawful employment practices under this statute. *Id.* As such, this claim is dismissed against Mitchell, Roegge, Scally, Marion, and Venson with prejudice.

Defendants move to dismiss Count IV because Umberger is not a member of a protected class under Title VII due to his disability or his "refusal to employ Defendants' discriminatory policing practice[.]" D. 17, at 15. They also argue Umberger cannot state a claim of retaliation under Title VII because it only protects against retaliation for exercising rights under Title VII. *Id.* Defendants argue in the alternative that Umberger did not identify retaliation in his charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") and as a result, he cannot make such a claim here. *Id.* To support this argument, Defendants attach Umberger's EEOC charge of discrimination as an exhibit.[2] D. 17-1, at 1.

Umberger concedes that the "disability" language should be removed from this Count as disability discrimination in the province of the ADA, rather than Title VII. D. 23, at 20. Umberger argues this Count should not be dismissed because "Defendants' racial discriminatory misconduct in their recruit training program is prohibited under 42 USC 2000e-2(d)[.]" *Id.* Umberger claims Defendants retaliated against him when he "did not turn a blind eye" to the practice. *Id.* He does not respond to Defendants' arguments that he is not a member of a

---

[2] On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), documents presented outside the pleadings are generally either excluded or the motion is converted to a motion for summary judgment; however, documents attached to a motion to dismiss may be considered part of the pleadings if they are referred to in the Complaint and are central to the claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

protected class for his refusal to discriminate against minority citizens and that he cannot state a retaliation claim under Title VII.

Umberger's failure to respond to Defendants' arguments is fatal to this claim. "When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action." *Cty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 818 (7th Cir. 2006) (internal quotations omitted). A plaintiff effectively waives a claim when he neglects to respond to alleged deficiencies in a motion to dismiss. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *see also Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (noting a complaint may comply with the notice pleading requirements of Rule 8(a)(2) and still be dismissed under Rule 12(b)(6) if the plaintiff does not present legal arguments supporting the legal adequacy of the complaint). Umberger cites two cases that state employers are prohibited from retaliating against employees who complain about discrimination or other practices that violate Title VII; however, those cases do not support Umberger's contention that he is a member of a protected class under Title VII for his refusal to discriminate. Nor do those cases provide relevant authority to excuse Umberger's failure to identify retaliation on his EEOC charge of discrimination.

"If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). Accordingly, the motion to dismiss is GRANTED with prejudice as to Count IV.

**Counts V & VI – *Monell* & Indemnification Claims Against Peoria**

Umberger brings a *Monell* policy claim (Count V), as well as a state law claim for indemnification (Count VI[3]), against Defendant Peoria. Under Count V, Umberger states, "the misconduct inflicted upon Plaintiff was a result of the policy, practice, and custom of [Peoria]" and was so pervasive and widespread it constituted the *de facto* policy of the City. D. 1, at 20-21. He asserts policymakers knew or should have known of "the unconstitutional policy" and were deliberately indifferent because the Department's training program has a reputation for being difficult and losing a large number of recruits. *Id.* at 21. The Complaint does not provide additional information about the policy that is the basis of Umberger's *Monell* claim.

Defendants move to dismiss Count V because Umberger did not provide a factual basis to support the claim that Peoria has policy or practice of discriminating against "disfavored" recruits and coercing their resignation so widespread that it constituted a *de facto* policy of the City. D. 17, at 19. Defendants contend Umberger has identified only one policymaker, Mitchell, but there are no allegations connecting him to this claim. *Id.* Defendants also move to strike all statements throughout the Complaint alleging a "widespread practice, policy, or custom" and of "final policymakers." *Id.* at 20.

Umberger's response to the instant motion provides more detail on the unconstitutional policy alleged as the root of his *Monell* claim. D. 23, at 22. Umberger argues he sufficiently pled Defendants had a widespread policy of violating minority citizens' rights based on his observations and those of other members of the Department. *Id.* Umberger then attempts to connect Mitchell to the *Monell* claim by arguing Mitchell failed to perform his express duties as

---

[3] The Complaint misnumbers the claims for indemnification, § 1983 retaliation, USERRA violation, ADA violation, and conspiracy under §§ 1985, 1986 as Counts V – IX. To prevent confusion, the Court will follow the numeric sequence of the preceding counts and refer to these claims as Counts VI – X.

mandated by FTGO 300.11. *Id.* at 23.

*Monell* held § 1983 actions could not be brought against local governments under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality like Peoria can only be held liable under § 1983 when the plaintiff identifies a practice, policy, or custom "that effectively caused or condoned the alleged constitutional violations." *Barnes*, 943 F.3d at 832 (quoting *Matthews*, 675 F.3d at 708). Put another way, a municipal employee must inflict a constitutional injury on the plaintiff by executing a municipal policy or custom. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014). Umberger does not identify how his constitutional rights were violated by Peoria's alleged *de facto* policy of discriminating against minorities; however, the Court makes the reasonable inference he is referring to a due process violation because of his argument against dismissal and the Complaint alleges that he was discharged in part because of his refusal to discriminate against minority citizens.

While a complaint need not allege specific facts, it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Iqbal*, 556 U.S. at 678. Looking to the Complaint for a factual basis to support this *Monell* claim, Umberger alleges he learned minority citizens, especially those "residing in housing projects," were routinely subjected to discriminatory policing practices. D. 1, at 11. Recruits were instructed to coerce minority citizens to consent to a search of their property, but Umberger did not embrace this practice. *Id.* at 12, 11. Umberger alleges this practice is "a long tradition" of the Department and "so obvious" that officers to not conceal their blatantly illegal searches. *Id.* at 12. He goes on to allege the training program is used to "force out" those recruits who were more likely "to blow the whistle and expose Defendants'

discriminatory practices employed against minority citizens." *Id.* While he describes a disturbing pattern of policing practices, Umberger does not offer any factual basis to support the conclusion that other recruits were discharged for their refusal to participate in the discrimination of minority citizens.

Umberger maintains these allegations are sufficient to state a plausible *Monell* claim against Peoria. The Court disagrees. In order to state a facially plausible *Monell* claim, the factual allegations in Umberger's Complaint must allow the Court to draw the reasonable inference that Peoria policymakers knew of and were deliberately indifferent to recruits being intentionally discharged because they refused to discriminate against minority citizens. That is, Umberger needed to allege enough "by way of factual content to 'nudg[e]' his claim 'across the line from conceivable to plausible.'" *Iqbal*, 129 S. Ct. at 1952 (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955). The only policymaker identified in the Complaint is Mitchell. Umberger does not allege Mitchell knew recruits were being discharged for their refusal to discriminate or that any recruit had ever complained about being forced to resign for that reason. The only other recruit who is specifically discussed in the Complaint is an unnamed white male who was "forced out" of the Department due to his disability. Umberger is granted leave to amend this claim to cure its deficiencies, but currently, he has not provided the factual basis to nudge his *Monell* claim across the line from conceivable to plausible.

It is also important to note that Umberger is suing Jerry Mitchell, the former Chief of the Peoria Police Department, "in both his individual and official capacity as the official policymaker of the City of Peoria when it comes to direct oversight of the Peoria Police Department." D. 1, at 3. "An official capacity suit . . . is a way of pleading an action against an entity of which the named defendant is an agent, but where the real party in interest is the entity."

*Jones v. Town of Highland*, 2014 U.S. Dist. LEXIS 122463, *8-9, 2014 WL 4376543 (N.D. Ind. 2014) (internal quotations omitted). As such, it may be redundant to bring the same claims against Mitchell in his official capacity and against Peoria.

Finally, Umberger brings a state law claim for indemnification against Peoria under Count VI. Defendants did not move to dismiss this Count, but it would inevitably fail if all substantive claims are dismissed. Umberger properly pled that individual Defendants were Peoria employees acting within the scope of their employment. Because some claims survive this motion and it is too early to know whether Peoria must indemnify the individual Defendants, Count VI remains against Peoria.

For these reasons, the motion to dismiss is GRANTED as to Count V against Peoria with leave to amend and Count VI remains against Peoria.

**Count VII – Retaliation Under § 1983 Against All Defendants**

Defendants move to dismiss Count VII because Umberger not identified the specific constitutional provision that was violated and as a result, he cannot make a prima facie case under § 1983. D. 17, at 10. They argue Umberger cannot allege a violation of the Fourteenth Amendment under this claim because "Umberger had no property interest in his job and therefore has no due process claim." *Id.* Defendants argue the only possible constitutional provision applicable to Umberger's retaliation claim is his right to free speech under the First Amendment. *Id.* at 10-11.

Umberger argues the Complaint satisfies the pleading standard for a retaliatory discharge count and then cites the elements for retaliatory discharge under Illinois law. D. 23, at 18. Umberger states he questioned his supervisors' instructions "to subject minority citizens to illegal stops without probable cause or reasonable suspicion and to conduct illegal searches in

violation of the 4th[*sic*] Amendment." *Id.* He then focuses on the circumstances surrounding his discharge and how he was not provided a termination hearing. *Id.* at 19. Umberger does not respond to Defendants' argument that the First Amendment is the only applicable constitutional provision to this claim.

Plaintiffs are not allowed to amend their complaints through the briefs in opposition to a motion to dismiss. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (it is "an axiomatic rule that a plaintiff may not amend his complaint in his response brief"). As such, the Court will disregard Umberger's references to the elements for retaliatory discharge under Illinois law as this is a federal claim for retaliation under § 1983. If Umberger wishes to add a state law claim for retaliatory discharge, he must request leave to amend his Complaint to do so.

As stated above under Count II, the Court is allowing Umberger's due process claim to proceed at this stage in the litigation. Again, Umberger does not allege Mitchell or Roegge were involved in the termination meeting, or that they had knowledge of the circumstances of his resignation. He has not provided a factual basis that municipal policymakers, including Mitchell, knew of and were deliberately indifferent to a widespread policy, practice, or custom of terminating or coercing the resignation of recruits who refused to discriminate against minority citizens. Since Defendants make no further argument on Umberger's retaliation claim under § 1983 by way of a due process violation, the motion to dismiss is DENIED as to Count VII against Venson, Scally, and Marion, and GRANTED against Peoria, Mitchell, and Roegge with leave to amend.

**Count VIII – Violation of Uniformed Services Employment and Reemployment Rights Act**

Umberger concedes that this Count should be dismissed. D. 23, at 9. The motion to dismiss is GRANTED with prejudice as to Count VIII.

**Count IX – Violation of Americans With Disabilities Act, 42 U.S.C. § 1201 & Section 504 of Rehabilitation Act of 1973, 29 U.S.C. § 701**

Umberger does not specify against which Defendants he brings this Count and the Complaint requests judgment "against Defendants." D. 1, at 24. However, much like Title VII, only those individuals who meet the statutory definition of "employer" may be liable under the Americans with Disabilities Act ("ADA"). *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir. 1995). Umberger alleges he was employed by Peoria at all relevant times. D. 1, at 2. Thus, the Court will make the reasonable inference Umberger intends to bring this Count against Peoria.

Defendants move to dismiss this Count because Umberger does not have a qualifying disability under the ADA and Rehabilitation Act. D. 16, at 3. While Umberger alleges under this Count that Defendants failed to accommodate his disability, Defendants argue there are no details on how the City failed to accommodate. D. 17, at 8. Defendants also argue Umberger has not alleged his ADHD substantially limits his ability to perform a major life activity as compared to the general population. *Id.* Finally, Defendants assert they have found no case in this Circuit where a court found ADHD was a qualifying disability in the employment context. *Id.* at 9.

In his response, Umberger argues his ADHD is a disability for purposes of ADA relief. D. 23, at 9. He states he is able to perform his duties as an officer with two accommodations: extra time to concentrate for reading and test-taking, and the daily ingestion of Adderall. *Id.* Umberger

19

points to the ADA Amendments Act of 2008, which emphasized that the definition of disability should be construed in favor of broad coverage of individuals. *Id.* at 10. He argues what constitutes a disability must be determined on a case-by-case basis and thus, it does not matter whether Defendants found cases where ADHD was a qualifying disability. *Id.* at 11. Umberger also argues the two cases cited by Defendants involved summary judgment after discovery had been conducted. *Id.* at 15.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim under § 12112(a), a plaintiff must allege three things: (1) he has a disability that fits the definition in the ADA, (2) he is otherwise qualified to perform the duties of his job either with or without a reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015); *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016). To determine whether a violation of the Rehabilitation Act occurred in the employment context, the Seventh Circuit has applied the standards of the ADA. *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002). Umberger need not provide extensive factual detail at the pleading stage, but he must include enough information to give the defendants fair notice of the claim. *Tate*, 809 F.3d at 345-46.

Here, Umberger has alleged his ADHD fits the definition of disability in the ADA. While he alleges he was denied accommodation for his disability, Umberger progressed through the training program for nine months without accommodation and claims there was no legitimate cause for his termination. This may be due to the coping and adjustment skills Umberger

developed at a young age, combined with the medication prescribed to sharpen his ability to focus. In other words, Umberger has implied he was qualified to perform the duties of his job either with or without accommodation. Finally, Umberger alleges he suffered adverse employment actions due to his disability. At this stage in the litigation, Umberger has pled enough information to give Defendants fair notice of his ADA claim.

Defendants concede that the ADA broadly defines "disability," but they contend an impairment only qualifies under the ADA if it substantially limits a major life activity. D. 27, at 3. Defendants cite cases where the district court found plaintiffs were not substantially limited in one or more major life activities due to ADHD; however, those findings were made after some discovery had been conducted and the parties moved for summary judgment. Defendants provide no relevant authority where a motion to dismiss was granted because ADHD was not a qualifying disability under the ADA. The Court believes the issue of whether Umberger is substantially limited in a major life activity may be resolved after discovery and possibly through dispositive motions. For these reasons, the motion to dismiss is DENIED as to Count IX against Peoria.

### Count X – Conspiracy Under 42 §§ 1985, 1986 Against All Defendants

As stated under Count III, Umberger does not provide a factual basis to raise a conspiracy claim above a speculative level. In his response, Umberger discusses the conspiracy in a general manner, without distinguishing between §§ 1983, 1985, or 1986, though he cites cases involving claims made under § 1983. Umberger does not respond to Defendants' argument that the conduct alleged does not fit within the statutory sections cited under this Count. His failure to respond to Defendants' specific challenges to this Count is fatal to the claim. For these reasons, the motion to dismiss is GRANTED with prejudice as to Count X.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (D. 16) is DENIED in part and GRANTED in part. For the sake of clarity, the Court will summarize its Order:

- Count I remains against Defendants Venson, Scally, and Marion; it is dismissed without prejudice against Defendants Peoria, Mitchell, and Roegge.

- Count II remains against Defendants Venson, Scally, and Marion; it is dismissed without prejudice against Defendants Peoria, Mitchell, and Roegge.

- Count III is dismissed without prejudice against all individual Defendants.

- Count IV is dismissed with prejudice against all Defendants.

- Count V is dismissed without prejudice against Defendant Peoria.

- Count VI remains against Defendant Peoria.

- Count VII remains against Defendants Venson, Scally, and Marion; it is dismissed without prejudice against Defendants Peoria, Mitchell and Roegge.

- Count VIII is dismissed with prejudice against all Defendants.

- Count IX remains against Defendant Peoria.

- Count X is dismissed with prejudice against all Defendants.

Plaintiff Umberger is granted leave to amend any of the claims dismissed without prejudice by filing a first amended complaint on or before May 12, 2020.


Signed on this 21st day of April, 2020.

s/James E. Shadid_____
James E. Shadid
United States District Judge